AO 106 (Rev 04/10) Application for a Search Warrant

**US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
FEB 24 2019
DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk**

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

THE LOCATION OF THE CELLULAR TELEPHONE
ASSIGNED CALL NUMBER 870-577-4617

Case No. 3:19 CM 04

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Western District of Arkansas, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), 846 | Conspiracy to Distribute Controlled Substances (methamphetamine) |

The application is based on these facts:

See Attached Affidavit of FBI SA Justin Ledzinski

☑ Continued on the attached sheet.

☑ Delayed notice of 30 days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI SA Justin Ledzinski
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/24/19

*Judge's signature*

City and state: Fort Smith, Arkansas

Hon. Mark E. Ford, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 870-577-4617, (the "Target Telephone"), whose wireless service provider is **VERIZON WIRELESS**.

2. Information about the location of the Target Telephone that is within the possession, custody, or control of **VERIZON WIRELESS,** including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **VERIZON WIRELESS; VERIZON WIRELESS** is required to disclose the Location Information to the government. In addition, **VERIZON WIRELESS** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **VERIZON WIRELESS** services, including by initiating a signal to determine the location of the Target Cell Phone on **VERIZON WIRELESS** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **VERIZON WIRELESS** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE LOCATION OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 870-577-4617 | Case No. 3:19 CM ____<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, JUSTIN A. LEDZINSKI, Special Agent of the Federal Bureau of Investigation (FBI), being duly sworn, depose and state that:

### INTRODUCTION

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been a Special Agent with the FBI for over ten (10) years. I am currently assigned to the Little Rock Office, Fayetteville Resident Agency of the FBI, and have been since November of 2007. From 2005 to 2007, I was assigned to the Laredo, Texas Resident Agency of the FBI. In connection with my official FBI duties, I investigate criminal violations of the Controlled Substances Act. I have received specialized training in the enforcement of federal narcotics laws. My training and experience has involved, among other things, (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealment of proceeds of drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence. I have also received

training in investigations involving the interception of wire and electronic communications and have participated in numerous investigations involving the interception of wire and electronic communications. Based on my training and experience, I have become familiar with the manner in which narcotics traffickers conduct their drug-related businesses, including the methods employed by narcotics dealers to import and distribute narcotics, and their use of coded language to refer to narcotics, drug proceeds, and other aspects of narcotics trafficking. I have received specialized training from the FBI relating to the investigation of drug and money laundering offenses and have been personally involved in several investigations involving the unlawful possession, manufacture, and distribution of controlled substances, including cocaine, methamphetamine, marijuana, and money laundering.

3. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the Verizon cellular telephone assigned call number 870-577-4617 (hereafter "Target Cell Phone," or "Target Telephone"), and IMSI 311480442655468 which utilizes the Verizon Wireless network, a wireless telephone service provider. The target cell phone has a customer service effective date of August 22, 2018 and is subscribed to Zachery Manning at 145 Mikes Road, Harrison, AR 72601-9151. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and as such does not set forth all of my knowledge about this matter, but rather only facts

I believe are sufficient to establish the probable cause necessary to obtain authorization to track the Target Cell Phone. Based on the facts set forth in this affidavit, Affiant submits there is probable cause to believe that violations of 21 USC 841(a)(1) and 846 have been committed, are being committed, and will continue to be committed by Zachery Manning and others. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of additional individuals who are engaged in the commission of these offenses in concert with Manning.

## PROBABLE CAUSE

5. For the past several months, Agents with the FBI have been conducting an investigation concerning the drug trafficking activities of ZACHERY MANNING[1], and other yet unidentified individuals, who have been distributing methamphetamine drugs (meth) for some time in and around the area of Boone County, Arkansas. The investigation has revealed that MANNING uses the target telephone to conduct methamphetamine trafficking activities.

6. On 10/31/2018, a Confidential Source (CS1)[2] met with law enforcement officers at a predetermined location in order to conduct a controlled purchase of meth from MANNING. CS1 and CS1's vehicle were searched for contraband items with negative result. CS1 was provided with surveillance and recording devices and was issued law enforcement controlled drug purchase funds. CS1 departed from the location and

---

[1] The communications quoted throughout this affidavit are provided as a guide from affiant. They are not intended to be exact renderings, but do capture the nature of the communications between the speakers. In the event any discrepancy is perceived between the original recording and the transcript, the recording is the final authority.

[2] CS1 has been a paid informant for the FBI since 10/1/2018. In CS1's time as a paid informant, CS1 has performed controlled purchases of methamphetamine from two separate targets on three separate occasions. CS1's information has been corroborated through a review of phone records, through surveillance, and through CS1's controlled purchases of methamphetamine. CS1 has a criminal history which includes felony offenses.

surveillance was initiated by law enforcement officers. CS1 subsequently traveled to MANNING's residence located at 145 Mikes Road, Harrison, Arkansas and met with MANNING. CS1 returned to a predetermined location and met with law enforcement officers. CS1 provided law enforcement officers with a clear bag containing a white crystalline substance which field tested positive for the presence of methamphetamine drugs. CS1 also returned the surveillance and recording equipment provided to CS1. During a debriefing, CS1 explained MANNING provided an ounce of meth for which CS1 paid half and would owe MANNING the rest of the money.

7. Subsequent to the controlled drug purchase from MANNING on 10/31/2018, CS1 recorded two telephone calls with MANNING, who was utilizing Target Phone, discussing setting up the purchase of additional meth, from MANNING. The following excerpt is of the first telephone conversation between CS1 and MANNING on the target telephone on 10/31/2018.

> MANNING: "Oh ok I get it so you're not saying you want to take money to him or find somewhere"
>
> CS1: "I'm wanting to take his money"
>
> MANNING: "Gotcha give me just 20 minutes and call me right back ok and give me the amount"
>
> CS1: "Ok sounds good, bye."

8. Based on my knowledge of this investigation, when MANNING made the comment, "Oh ok I get it so you're not saying you want to take money to him or find somewhere" this is a statement confirming CS1 didn't have another source of meth supply. CS1 stated: "I'm wanting to take his money" as a reference that CS1 had access to a person who was willing to give CS1 money in order for CS1 to get him meth. The person CS1 was

referring to is actually law enforcement officers and law enforcement controlled drug purchase funds.

9. MANNING went on to respond to CS1: "Gotcha give me just 20 minutes and call me right back ok and give me the amount". Based on my knowledge of this investigation, when the MANNING made this comment, he wanted CS1 to call him back and tell him how much meth CS1 wanted to purchase.

10. In the second recorded telephone conversation CS1 held with MANNING on the target telephone on 10/31/2018, the following dialogue ensued:

> MANNING: "So you got an amount?"
>
> CS1: "Ok so I know for sure im gonna say for sure two, two for sure and that is gonna include the previous, that's gonna include my previous"
>
> MANNING: "what do you mean, you can just speak plain as day to me because I'm very naïve"
>
> CS1: "Ok me too so that includes my 250 that I owe you from today. Ok so I'll have a total of two. I'm waiting on some of it right now so Im hoping but first thing in the morning I'll have it."
>
> MANNING: "Ok well let me call and make sure I can do everything and uh I'll let you know is that cool?"
>
> CS1: "Yep"
>
> MANNING: "Ok bye"

11. Based on my knowledge of this investigation, when MANNING asked CS1, "So you got an amount?" he is asking how much meth CS1 wants to purchase. When CS1 responded, "Ok so I know for sure im gonna say for sure two, two for sure and that is gonna include the previous, that's gonna include my previous" CS1 is asking MANNING to bring two ounces of meth for CS1 to purchase from him. CS1 is also telling MANNING he/she is

going to pay MANNING the debt owed from the previous purchase of meth (one ounce of meth CS1 purchased from MANNING on 10/31/2018). When MANNING made the comment, "Ok well let me call and make sure I can do everything and uh I'll let you know is that cool?" MANNING is explaining to CS1 that he needs to contact his source of meth supply to determine when he can get access to the meth CS1 requested to purchase from him.

12. On 11/16/2018, a Confidential Source (CS2)[3] contacted MANNING at Target Phone via text message in order to set up a future purchase of meth. The following text message conversation ensued with MANNING:

> CS2: "Hey looks like it will be Monday morning before I get any money they backed out on paying me half but anyway I'll come out to your house as soon as I leave the bank or what time do you normally go to work?"
>
> MANNING: "Depends"
>
> CS2: "Ok I'll get with you as soon as I can though you working today?"

13. Based on my knowledge of this investigation, when CS2 told MANNING, "Hey looks like it will be Monday morning before I get any money" CS2 is explaining that he/she won't have any money until Monday to purchase meth from MANNING. In the same dialogue, CS2 also stated, "I'll come out to your house as soon as I leave the bank or what time do you normally go to work?" This is a reference by CS2 telling MANNING that he/she will pick up money from the bank in order to purchase meth from MANNING; CS2 also wanted to know if MANNING would be at his residence or at work to sell meth to CS2.

---

[3] CS2 has been an informant for the 14th Judicial Drug Task Force since 11/6/2018. In CS2's time as an informant, CS2 has performed controlled purchases of methamphetamine from two separate targets on four separate occasions. CS2's information has been corroborated through a review of phone records, through surveillance, and through CS2's controlled purchases of methamphetamine. CS2 has a criminal history which includes felony offenses.

Affidavit page 6

14. On 11/19/2018, CS2 met with law enforcement officers at a predetermined location in order to conduct a controlled purchase of meth from MANNING. During the meeting with law enforcement officers, CS2 placed a call to MANNING, using Target Phone, to finalize setting up a meeting with MANNING for the purpose of purchasing meth. This telephone call was recorded by law enforcement officers. The following are portions of the telephone conversation CS2 held with MANNING:

> CS2: "Hey what you doing?"
>
> MANNING: "I don't know not much you near the shop?"
>
> CS2: "Heck yeah near the shop"
>
> MANNING: "Fixing to get a quick smoke in after pushing a car"
>
> CS2: "Oh yeah haha"
>
> MANNING: "Yeah"
>
> CS2: "I know that feeling, shit, hey um im gonna come by and see you real quick"
>
> MANNING: "Ok"
>
> CS2: "So uh I got paid so I'll be over."

15. Based on my knowledge of this investigation, when MANNING asked CS2, "I don't know not much you near the shop?" MANNING is asking if CS2 is near the shop where he, MANNING, worked. This is also a suggestion by MANNING to determine if CS2 can meet him, MANNING, at the shop in order for him to sell CS2 some amount of meth. MANNING was identified as working at a boat repair shop located in Harrison, AR on the north side of Highway 65, near the Harrison visitor center. CS2 responded, "Heck yeah near the shop" and added, "I know that feeling, shit, hey um im gonna come by and see you real quick". This is a reference by CS2 to confirm meeting MANNING at the boat repair shop in order to purchase an amount of meth from MANNING. CS2 also told

MANNING, "So uh I got paid so I'll be over." This is a reference by CS2 disclosing to MANNING that CS2 has money to pay MANNING for meth.

16. Subsequent to the call with MANNING, CS2 was issued law enforcement controlled drug purchase funds as well as surveillance and recording equipment. CS2 and CS2's vehicle were searched for contraband items with negative result. CS2 departed from the location and surveillance was initiated by law enforcement officers. CS2 subsequently traveled to MANNING's location and met with MANNING. Surveillance photographs were taken of MANNING and his vehicle by law enforcement officers during the controlled drug purchase. CS2 subsequently returned to a predetermined location and met with law enforcement officers. CS2 provided law enforcement officers with a bag containing a white crystalline substance which field tested positive for the presence of methamphetamine drugs. CS2 also returned the surveillance and recording equipment provided to CS2. During a debriefing, CS2 explained MANNING would have more meth to sell CS2 later that evening.

17. In my experience, the general location of the target telephone gathered from cell site/sector location, GPS location, or other means, can yield evidence which is relevant and material to an ongoing criminal investigation of the specified offenses. Such information includes leads relating to: (1) the geographic breadth of the suspected drug trafficking cell; (2) the transportation routes and means for trafficking narcotics and drug proceeds from one geographic area to another; (3) other geographic locations where a drug organization may be engaging in similar conduct; (4) the geographic location of "stash" houses; and (5) the geographic locations where meetings are held to exchange narcotics and money. Further, the geographic location of the target telephone can be used to corroborate the observations of surveillance agents. Surveillance agents can compare

observations of the user of the target telephone with geographic information in order to verify the identification and location of the user of the target telephone.

18. Given the ongoing nature of this investigation, immediate notification of this warrant will have an adverse result. Accordingly, delayed notice of 30 days is requested under 18 U.S.C. § 3103a.

19. Based on the same concerns that knowledge of the investigation would jeopardize its effectiveness, I request that this affidavit, the application, and the order as well as any other related documents be sealed pursuant to the provisions of the United States District Court for the Western District of Arkansas general rule 7.

20. In my training and experience, I have learned that VERIZON is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not

Affidavit page 9

necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise than E-911 Phase II data.

21. Based on my training and experience, I know that VERIZON can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on VERIZON network or with such other reference points as may be reasonably available

22. Based on my training and experience, I know that VERIZON can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

24. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  See 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18

U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

25. I further request that the Court direct VERIZON to disclose to the government any information described in Attachment B that is within the possession, custody, or control of VERIZON. I also request that the Court direct VERIZON to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with VERIZON'S services, including by initiating a signal to determine the location of the Target Cell Phone on VERIZON network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate VERIZON for reasonable expenses incurred in furnishing such facilities or assistance.

26. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

27. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed pursuant to the provisions of the United States District Court for the Western District of Arkansas general rule 7. These


documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Justin Ledzinski

Special Agent

Federal Bureau of Investigation

Subscribed and sworn to before me on this 24 day of January, 2019

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF ARKANSAS